## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO, WESTERN DIVISION

| | | |
|---|---|---|
| Leeann Harwick, | ) | Case No. 3:21-cv-1574 |
| | ) | Judge: |
| | | |
| Plaintiff, | ) | **COMPLAINT WITH JURY** |
| | | **DEMAND ENDORSED HEREON** |
| vs. | ) | |
| | | |
| Cedar Fair, L.P., | ) | |
| One Cedar Point Dr., | | |
| Sandusky, Ohio 44870 | ) | |
| c/o Corporation Service Company, | | |
| 50 West Broad St., Suite 1330, | ) | |
| Columbus, Ohio 43215, statutory | | |
| agent, | ) | |
| | | |
| and | ) | |
| | | |
| Cedar Point Park LLC, a Delaware | ) | |
| Limited Liability Company, | | |
| c/o Corporation Service Company, | ) | |
| 50 West Broad St., Suite 1330, | | |
| Columbus, Ohio 43215, statutory | ) | |
| agent, | | |
| | | |
| Defendants. | | |

Now comes the Plaintiff, LeAnn Harwick, by and through counsel, and for her complaint, states and avers as follows:

### PARTIES

1. Plaintiff LeAnn Harwick is a United States citizen, and at the time the events underlying this complaint occurred, was an employee of Defendant Cedar

1

Fair, Inc., at the amusement park known as Cedar Point, in Sandusky, Ohio.

2. Defendant Cedar Fair, L.P., is an Ohio-based corporation that owns Cedar Point and other amusement parks, and at the time the events underlying the complaint occurred, was the employer of the Plaintiff as well as the operator of dedicated Cedar Point employee housing where Plaintiff resided.

3. Cedar Point Park LLC, is a Delaware Limited Liability Company, that owns real property known as the "Commons" which is dedicated Cedar Point employee housing where Plaintiff resided and the events underlying the complaint occurred.

## JURISDICTION

4. This Court has subject matter jurisdiction over this case under 28 U.S.C. §1331, and the Plaintiff's supplemental claims under 28 U.S.C. §1367(a).

5. This Court has territorial jurisdiction over the Defendants because the events underlying same took place in Sandusky, Ohio.

## VENUE

6. Venue is proper in this Court under 28 U.S.C. §1391(b).

## FACTUAL ALLEGATIONS

7. On or about August 12, 2020, in Sandusky County, Ohio, the Plaintiff was an employee of the Defendant Cedar Fair, L.P. working in her 3rd season at the amusement park known as Cedar Point

8. On or about August 12, 2020, the Plaintiff was a resident of her employer's dormitory community exclusive to active associates known as the

"Commons."  Rent for residency at the "Commons" was deducted directly from Plaintiff's Cedar Point payroll check.

9.  On that day, the Plaintiff worked from 8:00 a.m. until 10:00 p.m.  She then went to Texas Roadhouse for dinner with co-workers Mike and Nathan (last names unknown).

10. After dinner, shortly after 11:00 p.m., all three went back to their dorms located at the property commonly known as "The Commons," a dormitory community owned by Defendant Cedar Point Park LLC and operated and controlled by the Defendant Cedar Fair, L.P. for the benefit of housing its active employees, to change their clothes.

11. The co-workers then went to the beach where a gathering was being held for Kara (last name unknown), another co-worker who was leaving for the season.

12. Afterward, the Plaintiff and several others from the beach gathering went to socialize further at Kara's dorm at Castaway Bay, an employee dormitory also operated and controlled by the Defendant Cedar Fair, L.P..

13. At the Castaway Bay, a man named Can Oncul, from the country of Turkey and Cedar Point employee whom the Plaintiff had previously trained, was present at the social gathering.

12. The Plaintiff, Michael, Nathan and Can Oncul departed Castaway Bay and returned to the "Commons" between 1:30 and 2:00 a.m.  Each went through the security line as required and had their Cedar Point issued I.D.s checked.

3

13. While in line, Can Oncul asked the Plaintiff for her contact information to meet at her dormitory and facilitate a ride to work in the morning along with another co-worker.

14. The Plaintiff shared her contact information with Can Oncul, including telephone number and dorm-room number, via the social media application Snapchat.

15. After being admitted to the Commons, all four persons then went to their respective dormitories; the Plaintiff went to her room at Millenium House where she immediately started getting ready for bed and presumably Can Oncul departed to another Cedar Point employee dormitory known as Top Thrill Dragster where he resided.

16. At about 3:30 a.m., August 13, 2021, the Plaintiff was sitting on her bed when Can Oncul entered her room. Leeann told him, "I didn't know you were coming."

17. Can Oncul was wearing the same clothes as from earlier in the night and had brought nothing with him. He immediately came toward her, grabbed the Plaintiff's arm, pulled her to the door and locked it, pulled her back to her bed, pushed her onto it, pulled off her pants, and forcibly raped her.

18. While raping the Plaintiff, Can Oncul forced a vape device into her mouth and involuntarily induced her to smoke from his vape pen.

19. After Can Oncul raped her, the Plaintiff told him she had to use the bathroom, but he insisted on going with her. On their way to the bathroom,

4

Can Oncul held her arm so as not to let her escape him. The Plaintiff convinced Can to enter the bathroom first to make sure it was empty; when he went in, she ran out the main entrance of the dormitory to find a Cedar Point security guard ordinarily posted at the door (in previous seasons), but none was there.

20. The Plaintiff re-entered the dormitory through an emergency exit door, ran upstairs to the second floor and into the men's restroom, then into a toilet stall.

21. Once inside the stall, the Plaintiff text-messaged her father and stepfather; the latter then called the Sandusky Police.

22. After about a half hour, two female Cedar Fair security persons came to the restroom, escorted took the Plaintiff outside, and put her in a Sandusky Police car. Later accompanying her to Firelands Main Campus hospital.

23. Those same two Cedar Fair security persons then went to the Plaintiff's room, where Can Oncul had returned after Plaintiff had escaped him. Can Oncul was taken to the Sandusky Police station for questioning.

24. To the best of the Plaintiff's knowledge and belief, Can Oncul briefly continued his employment at Cedar Point, then fled the country and returned to Turkey prior to state and local authorities initiating prosecution.

25. A Sexual Assault Nurse Examiner (SANE) arrived from Toledo at around 9:30 a.m. and examined the Plaintiff. The examination revealed semen, a sample of which was retained.

26. At all relevant times, the Defendant Cedar Fair, L.P. was responsible for the provision of Police, Cedar Point security personnel, and Residential Assistants at the Plaintiff's dormitory community, the "Commons."

27. Prior to 2020 season, the Defendant Cedar Fair, L.P. utilized two Sandusky Police officers to patrol the Commons campus where the employee dormitories were located, and posted one Cedar Point security guard outside of each dorm.

28. In 2020, the Defendant Cedar Fair, L.P. stopped following the aforementioned security practices, decreased the security presence within the Commons, including no longer staffing a security guard outside each dorm. Nor was Sandusky Police presence continued.

29. However, Cedar Fair continued to house its active employees in a comparable capacity at the Commons in spite of the diminished security.

30. Cedar Fair has stopped following the routine security staffing practices they had previously considered necessary.

31. On August 13, 2020, there was not a security guard posted outside the Plaintiff's dormitory.

32. The Defendant Cedar Fair, L.P.'s reduction in security was an affirmative act which increased the likelihood of the sexual assault and harassment which occurred to Plaintiff on the premises operated and controlled and by the Defendant Cedar Fair, L.P..

33. Prior to and including 2020, the Defendant Cedar Fair, L.P. posted a Resident Attendant at the front desk of the entry to each dorm building, and Defendant's policy required that any male entering the first floor of Millenium House (or other dorms used exclusively for housing of female employees), was stopped by the R.A. at the front desk and then required to be met and accompanied by their female in order to gain entry to the building.

34. On August 13, 2020, there was not a Resident Attendant posted at the front desk of the entrance to the Millenium House and if there was, Cedar Fair protocols were not followed and administered.

35. Can Oncul was able to enter the Millenium House without being observed by posted Cedar Point security because security staff had been reduced and no security guards were on duty or posted outside the Millenium House.

36. Can Oncul was able to enter the Millenium House without being stopped by the Resident Attendant because no Resident Attendant was on duty or failed to administer protocols for entry.

37. But for Cedar Fair's actions to reduce police, security and an R.A., Plaintiff and others would have been alerted to Can Oncul's presence, preventing his entry after Leeann had already gone to bed, and/or deterring the rape that subsequently occurred.

38. On or about Feb 4, 2021, the Plaintiff submitted a complaint to the U.S. Equal Employment Opportunity Commission (EEOC).

39.  On or about June 8, 2021, the Defendant Cedar Fair, L.P. responded to the Plaintiff's EEOC complaint.

40. On or about July 14, 2021, the Plaintiff received a Notice of Right-to Sue letter from the EEOC (Exhibit A).

41. All conditions precedent to the Plaintiff's filing this lawsuit have occurred or have been satisfied.

**COUNT ONE**

42. The Plaintiff realleges all preceding allegations.

43. At all relevant times, the Defendant Cedar Fair, L.P. was an "employer" under 42 U.S.C. §2000e(b).

44. At all relevant times, the Plaintiff was an "employee" of the Defendant Cedar Fair, L.P. under 42 U.S.C. §2000e(f), a business invitee of the Defendant, and a member of a protected class.

45. At all relevant times, Can Oncul was an "employee" of the Defendant Cedar Fair, L.P. under 42 U.S.C. §2000e(f).

46. Can Oncul's forcible raping of the Plaintiff was unwelcome sexual harassment under 42 U.S.C. §2000(e) et seq., and he raped her because of her gender.

47. The unwelcome sexual harassment was based upon the Plaintiff's gender.

48. The unwelcome sexual assault and/or harassment created a sex-based hostile work environment.

49. The Defendant Cedar Fair, L.P. negligently created workplace conditions that put the Plaintiff at a foreseeable risk of harm.

50. Can Oncul's raping the Plaintiff after gaining unauthorized entry into her dormitory was foreseeable to the Defendant Cedar Fair, L.P..

51. The Defendant Cedar Fair, L.P. owed the Plaintiff a duty of reasonable care to prevent workplace conditions from arising that put her at risk of harm.

52. The Defendant Cedar Fair, L.P. owed the Plaintiff a duty of reasonable care to prevent workplace conditions from arising that put her at risk of harm.

53. The Defendant Cedar Fair, L.P. failed to take reasonable care to prevent Can's sexually -harassing behavior.

54. The Defendant Cedar Fair, L.P. breached the duty of care it owed the Plaintiff in the following ways: failing to enforce its security policies; failing to train and/or supervise its security guards and or Resident Attendants; failing to place security guards outside the Plaintiff's dormitory on August 13, 2020 and/or reducing the number of security guards on duty; failing to place a Resident Attendant in the Plaintiff's dormitory on August 13, 2020 and/or reducing the number of Resident Attendants on duty; and, suspending or eliminating Sandusky Police patrols in the Commons.

55. As a direct and proximate result of the Defendant Cedar Fair, L.P.'s breach of duty, the Plaintiff was raped and incurred physical injury, psychological trauma and mental anguish that negatively affect her life to this day, and will so for the rest of her life.

56.  After being raped, and because of same, the Plaintiff quit her job and lost income.  She had worked at Cedar Point the previous two summers, this being her third.

57.  The Defendant Cedar Fair, L.P. is liable to the Plaintiff for damages.

58.  The Plaintiff knows other female employees of the Defendant who have been raped or sexually assaulted on the Defendant's property at Cedar Point and/or the employee dormitories or other facilities. This is not isolated and Defendant Cedar Fair, L.P. was negligent as described above.

## SUPPLEMENTAL CLAIMS

## COUNT TWO

59. The Plaintiff realleges all preceding allegations.

60. At all relevant times, the Defendant Cedar Fair, L.P. was an "employer" under R.C. §4112.01(A)(2).

61. At all relevant times, the Plaintiff was an "employee" under R.C. §4112.01(A)(3), a business invitee of the Defendant Cedar Fair, L.P., and a member of a protected class.

62.  At all relevant times, Can Oncul was an "employee" under R.C. 4112.01(A)(3).

63. Can Oncul 's raping the Plaintiff was unwelcome sexual harassment under R.C.  Ch. 4112 et seq., and he raped her because of her gender.

64. The unwelcome sexual harassment was based upon the Plaintiff's gender.

10

65. The unwelcome sexual assault and/or harassment created a sex-based hostile work environment.

66. The Defendant Cedar Fair, L.P. negligently created workplace conditions that put the Plaintiff at a foreseeable risk of harm.

67. Can Oncul's rape of the Plaintiff after gaining unauthorized entry into her dormitory was foreseeable to the Defendant Cedar Fair, L.P..

68. Can Oncul's rape of the Plaintiff was sexual harassment under R.C. Ch. 4112. et seq.

69. The Defendant Cedar Fair, L.P. owed the Plaintiff a duty of reasonable care to prevent workplace conditions from arising that put her at risk of harm.

70. The Defendant breached the duty of care it owed the Plaintiff in the following ways: failing to enforce its security policies; failing to train and/or supervise its security guards and or Resident Attendants; failing to place security guards outside the Plaintiff's dormitory on August 13, 2020 and/or reducing the number of security guards on duty; failing to place a Resident Attendant in the Plaintiff's dormitory on August 13, 2020 and/or reducing the number of Resident Attendants on duty; and, suspending or eliminating Sandusky Police patrols in the Commons.

71. As a direct and proximate result of the Defendant Cedar Fair, L.P.'s breach of duty, the Plaintiff was raped and incurred physical injury, psychological trauma and mental anguish that negatively affect her life to this day, and will so for the rest of her life.

72. After being raped, and because of same, the Plaintiff quit her job.  She had worked at Cedar Point for three summers and was continuing to work for several more months and through the Halloweekends.

73. The Defendant is liable to the Plaintiff for damages.

## COUNT THREE

74. The Plaintiff realleges all preceding allegations.

75. At all relevant times, the Defendants Cedar Park place and Cedar Fair, L.P. owned or operated the property on which the Plaintiff's dormitory room was located, i.e. occupied and possessed it with the intent to control it.

76. The Defendants had the power and the right to admit and exclude peoplefrom the premises comprising the Plaintiff's dormitory.

77. The Defendants were aware of threats to the safety and/or physical well being of female residents of the Plaintiff's dormitory and/or other dormitories on its property, and thus the Plaintiff herself, because of the occurrence of previous incidents of rape and/or sexual assault on those premises.

78. Despite the Defendants knowledge of previous incidents of rape and/or sexual assault, the Defendants took no action to protect the Plaintiff on August 13, 2020.

79. The Defendants had control over decisions regarding security at the Plaintiff's dormitory on or about August 13, 2020.

80. As owner, possessor and/or occupier of the Plaintiff's dormitory, the Defendants owed the Plaintiff a duty to use reasonable precautions or

12

safeguards to protect from harm at the hands of third parties, including its other employees, and/or not to unreasonably expose the Plaintiff to danger.

81. Because of the prior incidents of rape and/or sexual assault that occurred in its dormitories, of which the Defendants knew or should have known, the rape of  the Plaintiff was reasonably foreseeable.

82. By not placing security personnel at the Plaintiff's dormitory entrance(s) on August 13, 2020, and/or by not having and RA on duty that day, breached the duty of care it owed the Plaintiff.

83. The Defendants breached the duty of care it owed the Plaintiff in the following ways: own and/or operate a property with conscious disregard or deliberate indifference for the safety of its paying residential tenants, failing to enforce its security policies; failing to train and/or supervise its security guards and or Resident Attendants; failing to place security guards outside the Plaintiff's dormitory on August 13, 2020 and/or reducing the number of security guards on duty; failing to place a Resident Attendant in the Plaintiff's dormitory on August 13, 2020 and/or reducing the number of Resident Attendants on duty; and, suspending or eliminating Sandusky Police patrols in the Commons.

84. As a direct and proximate result of the Defendants' breaches of the duty of care they each owed to the Plaintiff, the Plaintiff was raped and incurred physical injury, psychological trauma and mental anguish that negatively affect her life to this day, and will so for the rest of her life.

13

85. The Defendants are liable to the Plaintiff for damages.

86. The Defendants acted toward the Plaintiff with malice, i.e., with hatred or ill will, or with conscious disregard of a great probability of causing her substantial harm.  Accordingly, the Defendant is liable to the Plaintiff for punitive damages.

WHEREFORE, the Plaintiff prays for judgment against the Defendants, and the following items of relief: compensatory damages, consequential and special damages exceeding $25,000.00, punitive damages, pre-judgment interest, attorney fees, costs, and any other relief the Court deems just or equitable.

Respectfully submitted,

/s/ Owen B. Dunn, Jr.
Owen B. Dunn, Jr. (OH0074743)
The Law Office of Owen Dunn, Jr.
The Ottawa Hills Shopping Center
4334 W. Central Avenue, Suite 222
Toledo, Ohio 43615
Telephone: (419) 241-9661
Facsimile: (419) 241-9737
Email: dunnlawoffice@sbcglobal.net
Lead Counsel for the Plaintiff

/s/ Bertrand R. Puligandla
Bertrand R. Puligandla (OH611400)
/s/ Vijay K. Puligandla
Vijay K. Puligandla (OH0041011)
The Puligandla Law Firm, LLC
1700 Canton, Suite 1-A
Toledo, Ohio 43604
Telephone: (419) 283-698
Facsimile: (419) 321-1991
Email: vpuligandla@yahoo.com
Co-Counsel for the Plaintiff

14

## JURY DEMAND

Under F.R.C.P. 38(b), the Plaintiff demands a trial by jury.


/s/ Owen B. Dunn Jr.
Owen B. Dunn Jr.