**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| LEEANN HARWICK, | ) | CASE NO. 3:21-cv-1574 |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| vs. | ) | |
| | ) | **DEFENDANTS' MOTION TO DISMISS** |
| CEDAR FAIR, L.P., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

Now comes the Defendants, Cedar Fair, L.P. and Cedar Point Park LLC (hereinafter "Defendants"), by and through counsel, and pursuant to F.R.C.P. 12(b)(6), hereby submits this Motion to Dismiss for failure to state a claim upon which relief may be granted. A Brief in Support of this Motion is attached hereto, made a part hereof and incorporated by reference as if fully rewritten herein.

Respectfully submitted,

/s/Justin D. Harris
JUSTIN D. HARRIS (0078252)
REMINGER CO., L.P.A.
237 W. Washington Row, 2nd Floor
Sandusky, Ohio 44870
Phone: (419) 609-1311
Fax:   (419) 626-4805
E-Mails: jharris@reminger.com

Counsel for Defendants

**BRIEF IN SUPPORT OF MOTION TO DISMISS**

**I.     INTRODUCTION**

Plaintiff, LeeAnn Harwick, originally filed this action on August 13, 2021. (*See* Complaint). Prior to a responsive pleading being filed by the Defendants, Plaintiff filed an Amended Complaint on August 25, 2021. (*See* Amended Complaint). The claims asserted in the Amended Complaint arise out of an alleged single incident of unpermitted and unwanted sexual touching between Plaintiff and another non-supervisory co-worker, Can Oncul. *Id.* Of note, Mr. Oncul was not named as a defendant to this action.

The alleged non-consensual sexual encounter with non-party Can Oncul, as alleged, occurred after the Plaintiff left work. *Id*. Specifically, Plaintiff alleges that she worked for the Defendant Cedar Fair, L.P. from 8:00 a.m. until 10:00 p.m. *Id.* at ¶9. <u>After work</u>, Plaintiff alleges that she went to dinner at Texas Roadhouse for dinner with co-workers Mike and Nathan.[1] *Id.* Following dinner, approximately around 11:00 p.m., Plaintiff alleges that her and the two gentlemen (whose last names are unknown to her) went back to their residence, "The Commons," to change their clothes. *Id.* at ¶ 10. After they changed their clothes, the three of them went to the beach for a going away gathering of a friend named Kara (whose last name is unknown to the Plaintiff). *Id.* at ¶ 11. After spending some time at the beach, the Plaintiff alleges that her and several "off-duty" workers left the beach and went to Kara's dorm/residence, known as "Castaway Bay," for a social gathering. *Id*. at 12. At Castaway Bay, Plaintiff alleges that a man named Can Oncul, from the country of Turkey, was present at the social gathering between co-workers who were off duty (i.e., off-the-clock) at the residence of Kara (last name unknown by Plaintiff). *Id.* at 13.

---

[1]     Plaintiff does not know the last names of the two gentlemen she went to dinner with.

Plaintiff alleges that she left the residence of Kara (last name unknown by Plaintiff) with Michael and Nathan (last names unknown by Plaintiff)—and Can Oncul—around 1:30 and 2:00 a.m. *Id.* at 14. According to Plaintiff, while the four of them were in the security line waiting to show their ID and confirm they were residence of the facility, Plaintiff shared her contact information (including dorm-room number)—along with her snapchat—with Can Oncul. *Id.* at ¶¶ 15-17. Plaintiff alleges that she went to her dorm-room, while non-party, Can Oncul, purportedly went to his dorm-room. *Id.* at 17. Plaintiff alleges that at approximately 3:30 a.m., non-party Can Oncul entered her room, in which she allegedly responded, "I didn't know you were coming." *Id.* at 18. Plaintiff alleges that while in her room, Can Oncul locked her door, raped her and forced her to smoke from his vape pen. *Id.* at ¶¶ 19-21. Afterward, Plaintiff left the room and called her mother (stepfather), her father, and the Sandusky police. *Id.* at ¶¶ 23-25. Cedar Point Security responded to the call, escorted Plaintiff out, found Can Oncul, and turned him over to the Sandusky Police. *Id*. Before the Sandusky Police investigation concluded, Can Oncul is believed to have fled the country. *Id.* at ¶ 26.

As alleged, it is undisputed that the sexual assault by non-party Can Oncul occurred outside of their respective employment (i.e., at 3:00 a.m. after their respective shift had ended). Plaintiff's Amended Complaint does not allege prior incidents of harassment by Can Oncul—or any other Cedar Fair, L.P. employee. (*See,* Amended Complaint). In fact, the Plaintiff does not allege any prior knowledge on the part of the Defendants that Can Oncul posed a risk to Ms. Harwick or others. By Plaintiff's own admission, both Ms. Harwick and Can Oncul were both allowed to be at "The Commons," as they both went through the same security to access the property.

After the Plaintiff shared her room number with Mr. Oncul, the facts, as alleged, are that Mr. Oncul walked through an unlocked door of Ms. Harwick's private dorm room. Albeit not

3

alleged, it is not conceivable that Mr. Oncul's action would have been foreseeable by the Defendants (nor the responsibility of the Defendants). After Plaintiff alerted the authorities, there is no dispute that Cedar Point Security responded immediately—apprehended Can Oncul—and turned over the investigation to the local law enforcement (Sandusky Police Department). Following the incident, it is not alleged, nor is there any evidence to establish, that Ms. Harwick was placed in a position in which she was required to work with Can Oncul. In fact, it is not alleged that the Plaintiff knew of Can Oncul prior the night of the alleged sexual assault. While this incident was being investigated by local law enforcement, it is believed that Can Oncul fled the country.

Notwithstanding the fact that the alleged sexual assault occurred outside of Plaintiff's work hours, Plaintiff has asserted claims against Defendants Cedar Fair, L.P. and Cedar Point Park, LLC for a hostile work environment based on sexual harassment by a co-worker under Title VII of the Civil Rights Act of 1964 and R.C. § 4112.01 *et seq*. (Count One and Count Two, respectively). *Id*. In Count Three of Plaintiff's Amended Complaint, Plaintiff also asserts a premises liability claim against Defendants with regard to the alleged assault. *Id.*

Plaintiff's claims, however, lack merit. On the face of the Amended Complaint, Plaintiff's claims fail as a matter of law. For example, for Plaintiff to be able to prevail on Counts I & II of her Amended Complaint and establish liability under a hostile work environment via sexual harassment by a co-worker, Plaintiff must set forth specific facts that the "employer knew or should have known about the harassment but failed to stop it." *Hafford v. Seidner*, 183 F.3d 506, 513 (6th Cir. 1999). Simply stated, a threshold pleading issue in this case is whether Defendants had actual or constructive "notice" of the alleged wrongful conduct (allegedly unpermitted touching) and failed to take prompt and appropriate corrective action to stop it from occurring. *Id*. The Plaintiff

4

does not make such allegations—as the Plaintiff is unable to point to any prior incidents of sexual harassment by Can Oncul towards her that Defendants were aware of—let alone, failed to address. To the contrary, the only allegations gleamed from the pleadings is that Defendants' security immediately responded to the scene, apprehended the alleged suspect, turned him over to the local law enforcement. There are no allegations gleaned from the pleadings that the Plaintiff was required to work with the non-party, Can Oncul, following the alleged sexual assault.

For similar reasons, County III of Plaintiff's Amended Complaint also fails as a matter of law. Specifically, as referenced above, there has been no evidence (let alone allegations) that Defendants knew or should have known that Can Oncul would sexually assault the Plaintiff. Simply stated, when analyzing Plaintiff's premises liability claim, there are absolutely no allegations (assuming Plaintiff's allegations as true) that her injury/assault was *foreseeable*. Accordingly, based on the law and argument set forth herein, Plaintiff's Complaint should be properly and appropriately dismissed.

## II. LAW AND ANALYSIS

### A. COUNTS I AND II OF PLAINTIFF'S COMPLAINT FAIL BECAUSE PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF SEXUAL HARASSMENT UNDER EITHER FEDERAL OR OHIO LAW.

Plaintiff has alleged hostile work environment[2] based on sexual harassment by co-workers, in violation of Title VII of the Civil Rights Act of 1964 and Section 4112.01 *et. seq.,* of the Ohio Revised Code. The Sixth Circuit has held that courts may appropriately analyze these two claims together. See *Gettings v. Bldg. Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 305 (6th

---

[2] The only other type of sexual harassment is quid quo pro, wherein a supervisor demands sexual favors as a condition for job benefits. *Kauffman v. Allied Signal, Inc., Autolite Div.*, 970 F.2d 178, 182 (6th Cir.1992). This is clearly inapplicable and will not be discussed.

Cir.2003) ("federal and state law claims of [sex] discrimination may be [analyzed] together"); *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm.*, 66 Ohio St.2d 192, 195, 421 N.E.2d 128 (1981). Likewise, Ohio courts have held that federal case law interpreting Title VII is "generally applicable" to cases involving sexual harassment claims under Ohio Rev. Code §4112. *Hawkins v. Anheuser—Busch, Inc.*, 517 F.3d 321, 332 (6th Cir.2008). Therefore, Counts One and Two of Plaintiff's Complaint should be analyzed together, and both fail as a matter of law.

To sustain her action, Plaintiff must show she (1) was a member of a protected class; (2) she was subjected to unwelcomed sexual harassment; (3) the harassment complained of was based on her sex; (4) the charged sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive work environment that seriously affected the psychological well-being of the plaintiff; and (5) employer liability (in more detail below). *Williams v. General Motors Corp.*, 187 F.3d 553, 560-561 (6th Cir. 1999).

The framework for assessing the fifth element in a hostile work environment action based on harassment by co-workers differs from that based on harassment by a supervisor. In a co-worker case, a plaintiff must show that the employer 1) knew or should have known of the charged sexual harassment, and 2) failed to implement prompt and appropriate corrective action." *Hafford v. Seidner*, 183 F.3d 506, 513 (6th Cir. 1999). Put differently, for an employer to be liable, the employer's response and remedy must manifest reckless or indifference in light of the facts that the employer knew or should have known. *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 831 (6th Cir.1999). Plaintiff has not satisfied her burden.

Here, it is clear that Plaintiff cannot meet elements four and five of a claim for hostile work environment.[3] In that regard, intrinsic within the fourth element is that for there to be an intimidating, hostile, or offensive work environment, the plaintiff must be subjected to a situation wherein she had to work with the harasser after the alleged harassment occurred. However, it is clear that under the facts as plead, Plaintiff was never put into a situation where she was subjected to working with or anywhere near Can Oncul.

Furthermore, and most significantly, there is no realm of possibility where there is employer liability for this alleged harassment as 1) Defendants did not know and could not have known of the potential of harassment by Can Oncul, and 2) Defendants immediately acted after they were made aware of the alleged sexual assault/harassment. Specifically, prior to August 12, 2020, Ms. Harwick did not plead that she had a prior interaction with the alleged harasser, Can Oncul. In fact, unlike the employer who could only learn of an employee's propensity for violence or sexual harassment through background checks and prior complaints (which the Plaintiff has not alleged in her Amended Complaint), Ms. Harwick socialized with Can Oncul outside of work for hours on the night of August 12, 2020, and after returning from this night long social gathering—shared her private room number and Snapchat with Can Oncul. (*See* Amended Complaint at ¶¶ 13- 16).

Clearly, Plaintiff, herself, would be in a better position than the Defendants to determine if it were foreseeable that Mr. Oncul would sexually assault her when she shared her private room number with him after spending the evening drinking and socializing with him. Stated differently, how could the Defendants be in a better position to know it was foreseeable that Can Oncul would

---

[3] While the focus is on these elements for the purpose of a Motion to Dismiss, Defendants do not believe the remaining elements have been satisfied either.

sexual assault the Plaintiff, when the Plaintiff, after spending most of the evening with Can Oncul, did not know she would be sexually assaulted? Under these set of facts as alleged, Defendants are not liable for a claim of a hostile work environment. The incident involving Can Oncul and the Plaintiff was a single, isolated incident for which the Defendants did not and could not have foreseen. Following the incident, the undisputed facts (as alleged) are that Defendants took immediate action by locating Plaintiff and involving local law enforcement.

Courts have consistently held that employers are not liable for claims of a hostile work environment when the employer did not or could not have known of the harassment by an employee—and who have initiated an investigation upon the initial discovery of sexual harassment.[4]

For example, in the Sixth Circuit case of *Rudd,* co-workers were <u>at work</u> when the coworker handcuffed the plaintiff, bent her over a filing cabinet, rubbed on her, had a belly chain draped around her neck, and asked via intercom whether it was "to hot in the kitchen" for her. *Rudd v. Shelby Cty.*, 166 Fed. Appx. 777, 777–78. While it was unclear what action was taken that day, the following day, plaintiff's supervisors were informed. *Id.* Within <u>five</u> days, an investigation was commenced, and it was at that point where the employer separated the employees on separate shifts so that the plaintiff did not have to work with the alleged harasser. *Id.* After a month of investigating, there was a settlement wherein the alleged harasser was removed from employment. *Id.* However, before that time, within two weeks of the incident, the plaintiff left her job. *Id.* On these facts, the appeals court found in favor of the employer, stating that "[the harasser]'s conduct—shocking as it was—does not relieve [plaintiff] of the burden of proving that [the

---

[4] The Court should not lose sight of the fact that this incident occurred outside of work. Plaintiff's attempt to create employer liability for an incident that occurred outside of work simply because the employer owns the residential facility where adult employees resided, and the assault occurred, is a red herring.

employer] failed to take prompt and effective corrective action once it learned of [the harasser]'s harassment." *Id.*

Similarly, in the Sixth Circuit case of *Fenton*, a co-worker made vulgar and sexually harassing comments to the plaintiff over a period of several weeks, including comments like how he was going to call "1-900 numbers and play with himself," that men "only want one thing from [her]," that she should "stop showing off her f-ing ass," and that she is "sexy when she is angry." *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 830 (6th Cir.1999). When it was reported to the supervisor, the supervisor immediately talked with the alleged harasser and placed them on separate shifts. *Id.* Within days, Plaintiff resigned and filed a claim of hostile work environment against the employer. *Id.* The court, however, found for the employer because Plaintiff could not prove the fifth element of the claim because the employer's response did not "manifest recklessness" or "indifference or unreasonableness in light of the facts the employer knew or should have known." *Id.* at 831.

Like in *Rudd* and *Fenton*, while the alleged actions of Can Oncul were shocking, Defendants cannot be liable because they did not know and should not have known of the harassment. More importantly, as alleged, the Defendants took action against such harassment (sexual assault) when it was discovered by involving the local law enforcement. In fact, the case at hand is even stronger in favor of the employer than *Rudd* and *Fenton* because here, the alleged harassment was a one-time instance occurring <u>outside of work.</u> Furthermore, unlike *Rudd* where the employer took five days to commence an investigation, Defendants found the alleged harassment (sexual assailant) and turned him over to the police <u>immediately.</u> Unlike *Fenton* where the harassment was continuous over a span of weeks, here, it was a one-time instance that no one could have foreseen. In light of these facts, it is clear that Plaintiff cannot establish claims of hostile

9

work environment under either Federal or Ohio law. As such, Counts One and Two of Plaintiff's Complaint must be dismissed.

      **B.**    **COUNTS III OF PLAINTIFF'S COMPLAINT FAILS BECAUSE PLAINTIFF CANNOT ALLEGE THE NECESSARY ELEMENTS OF NEGLIGENCE.**

Plaintiff's third and final cause of action is a claim against Defendants based on a theory of premises liability against Cedar Point Park, LLC, the company that owns the residential property where both the Plaintiff and Can Oncul resided.

To prevail on a claim for negligence the Plaintiff must prove the following elements:

(1) the existence of a duty owed by the Defendants to the Plaintiff;
(2) the breach of duty;
(3) causation; and
(4) damages.

*Hudzik v. Boulevard Centre Co.*, 11th Dist. No. 2017-T-0013, 2017-Ohio-9345, 103 N.E.3d 131, ¶ 16.

In general, a business premises owner generally owes a business invitee a duty to exercise ordinary care and to protect the invitee by maintaining the premises in a reasonably safe condition. *Lang v. Holly Hill Motel, Inc.,* 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120; *Bennett v. Stanley,* 92 Ohio St.3d 35, 38, 748 N.E.2d 41 (2001); *Light v. Ohio Univ.,* 28 Ohio St.3d 66, 68, 502 N.E.2d 611 (1986); *Presley v. Norwood,* 36 Ohio St.2d 29, 31, 303 N.E.2d 81 (1973). <u>In a housing setting, while the landlord has some duty to provide security to common areas, the landlord is not the insurer of the premises against criminal activity</u>. *Doe v. Flair Corp.,* 129 Ohio App.3d 739, 746, 719 N.E.2d 34, 39–40 (8th Dist.1998). Instead, "liability only attaches to a landlord here the landlord should have reasonably foreseen the criminal activity in question and failed to take reasonable precautions to prevent such activity, and this failure was the proximate cause of the tenant's harm. Foreseeability is based upon whether a reasonably prudent person

10

would have anticipated that an injury was likely to result from the performance or nonperformance of the act." *Id.*; see also *Kelly v. Bear Creek Invest. Co.* (Feb. 14, 1991), Cuyahoga App. No. 58011, unreported, 1991 WL 19152; see also *Carmichael v. Colonial Square Apts*, 38 Ohio App.3d 131, 132, 528 N.E.2d 585, 586–87 (10th Dist.1987).

"A business or property owner has a duty to protect others from injury due to criminal activity only if substantial evidence exists to demonstrate that the owner could foresee that the criminal activity would occur, and that people would be injured by the criminal activity." *Walters v. Oberling Ford, Inc.,* 4th Dist. Scioto No. 97CA2513, 1997 WL 603395 (Sept. 29, 1997). "The test for foreseeability is one of likelihood, not mere possibility." *Shadler v. Double D. Ventures, Inc.,* 6th Dist. Lucas No. L–03–1278, 2004-Ohio-4802, 2004 WL 2026412, ¶ 31 (stating that simply because fights occasionally occur in some bars does not mean that "a fight is imminent and foreseeable every day in every bar").

In the context of a premises owner's duty to protect its invitees from a third person's criminal conduct, Ohio courts appear to have taken a strict approach to the foreseeability analysis: "'To show foreseeability [of a third person's criminal act], one must demonstrate that **the specific harm** at issue **was foreseeable.**'" *Wheatley v. Marietta College*, 4th Dist. No. 14CA18, 2016-Ohio-949, 48 N.E.3d 587, ¶¶ 59-72 (citing *Heimberger v. Zeal Hotel Group, Ltd.,* 10th Dist., 2015-Ohio-3845, 42 N.E.3d 323, ¶ 25, quoting *Maier v. Serv–All Maintenance, Inc.,* 124 Ohio App.3d 215, 224, 705 N.E.2d 1268 (8th Dist.1997)."Under this analysis, therefore, it is not enough for an invitee to show that a premises owner should have foreseen a substantial risk of general harm to the invitee, but instead, the invitee must demonstrate that a premises owner should have foreseen a substantial risk of the precise harm that befell the invitee." *Wheatley v. Marietta College*, 4th Dist. No. 14CA18, 2016-Ohio-949, 48 N.E.3d 587, ¶¶ 59-72. Simply stated, the

11

Plaintiff must be able to establish that the Defendants should have foreseen Can Oncul sexually assaulting the Plaintiff. Plaintiff has not made said allegation as the Plaintiff does not have a good faith basis to plead said allegation.

Here, it is clear that the alleged rape that Can Oncul was alleged to have committed could not have been foreseen. Can Oncul was a Cedar Point worker also residing in the dorms. The Plaintiff has not plead that Can Oncul had prior issues with Plaintiff or the propensity to sexually assault others. Simply stated, the Plaintiff had not plead that there were any "red flags" that would be alarming as it relates to Can Oncul. In fact, Plaintiff herself, who had spent hours outside of work socializing with Can Oncul, must have felt comfortable enough with him to provide her contact information and room number when they returned to their residence.

The specific harm that was alleged to have occurred could not have been foreseen by the Defendants. As such, the Defendants, as the mere owner of the property, cannot be liable for criminal acts of a third party. Moreover, as Plaintiff admits in her Complaint, Defendants had more than adequate security. Defendants had security posted at the entrance of the residence halls to only allow those authorized to have access to the premises, and the resident all had deadbolt locked on their doors, which Plaintiff chose not to use. *Id.* at ¶¶ 14, 19. Finally, Plaintiff cannot establish, nor has she alleged, that additional security would have prevented the alleged assault by Can Oncul, as Mr. Oncul was an authorized resident of the facility—and he allegedly assaulted her behind the locked private door of Ms. Harwick's room.[5]

Courts have consistently held in favor of the property owners in circumstances similar to this. In *Wheatley*, a criminal entered a college dorm and raped a female student. *Wheatley v.*

---

[5] Further, to the extent that Plaintiff argues there was a lack of security present for her to go to after-the-fact, there was no allegation that another assault had occurred that could have been prevented.

*Marietta College*, 4th Dist. No. 14CA18, 2016-Ohio-949, 48 N.E.3d 587, ¶¶ 73-80. In a case against the college, the court determined that the rape was not foreseeable. *Id.* Notably, within its analysis, the court noted plaintiff's attempt to point to an alleged security deficiencies and the argument that unauthorized persons could access the building. *Id.* at ¶ 81. However, the court stated that just because an unauthorized person could access the building doesn't mean it was foreseeable to believe someone would be raped. *Id.* Moreover, the court stated that "[w]hat might possibly happen is not the same as showing a substantial likelihood that it would happen. Thus, even if [defendants] should have known that criminals could easily access [the dorm] and could harm students, the mere possibility is insufficient to establish foreseeability." *Id.*

In *Carmichael*, an intruder forced his way into plaintiff's apartment after plaintiff opened the door when hearing a knock, assaulted and robbed the plaintiff. *Carmichael v. Colonial Square Apts*, 38 Ohio App.3d 131, 528 N.E.2d 585, 586 (10th Dist.1987). At the time, the apartment was equipped with a lock and peephole. *Id.* Sometime before the incident, tenants were notified of the landlord's intent to install a security system of locked doors where one would need to be buzzed in to get into the hallway. *Id.* However, prior to the assault and robbery, this system had not been installed. As such, the plaintiff claimed that there was not adequate security. *Id.* However, the court ruled that a landlord was not the insurer of the premises against criminal activity and the landlord only need to take some reasonable precautions to provide security. *Id.* As such, the *Carmichael* court determined that it was not necessary to install the buzzer system, and regardless of the landlord's intent to install said system, the locks and peephole was sufficient. *Id.* Moreover, the court noted that the plaintiff opened the door knowing the "buzzer" system had not been installed. *Id.*

Finally, in *Doe v. Fair Corp.,* a rapist entered the property, removed a tenant from the premises, and raped her in the woods on the other side of the street. *Doe v. Flair Corp.*, 129 Ohio App.3d 739, 747, 719 N.E.2d 34, 40 (8th Dist.1998). There, the court found that the crime was not foreseeable such that the property owner could be liable. *Id.* Moreover, the court noted that security measures had been taken to ensure that only residents could access the residence dorms, which was a reasonable security measure. *Id.*

Here, just like in *Wheatley*, *Carmichael,* and *Doe v. Fair Corp.*, Defendants cannot be held liable for an alleged assault by a third party that was unforeseeable. The case at hand lacks any facts or circumstances wherein Defendants could have believed that a rape was substantially likely to occur. Defendants had had no knowledge of Can Oncul's intentions to sexually assault the Plaintiff after the returned from socializing with each other for hours. Ms. Harwick, based upon her own allegations, trusted Mr. Oncul enough to provide him with her contact information and private room number. Moreover, Plaintiff alleges that she left her dorm room unlocked knowing he and other residents had access to the dorm.[6] This situation is much like *Carmichael*, wherein the plaintiff was aware of the security in place yet choose to open the door anyway. Furthermore, the extent of Defendants security is much stronger than even in *Wheatley* where anyone could access the dorms, as Ms. Harwick acknowledges that there was security post at the entrance of the residence halls in which she and the other individuals she was with, including Can Oncul, had to go through to gain access to their dorms. Complaint at ¶ 14. Finally, any alleged inaction on the

---

[6] While Plaintiff contends that security measures were stronger in the past, the standard is not what Defendants had previously done, but what measures are reasonable, which Defendants have clearly implemented. Moreover, Plaintiff displays very clearly that she was aware of the security measures in place at the time, as she knew that it had been that way for the entire season, yet she still gave out her room number and left her door unlocked. See Complaint at ¶¶ 29-32.

14

part of Defendants did not cause the alleged assault. For these reasons, Count Three of Plaintiff's Complaint also fails as a matter of law and should be dismissed.

      **C.    STANDARD OF REVIEW**

Civ.R. 12(B)(6) provides for the dismissal of a claim when a court determines the plaintiff has failed to state a claim upon which relief can be granted. Civ.R. 12(B)(6); *York v. Ohio State Highway Patrol*, 60 Ohio St.3d 143, 144, 573 N.E.2d 1063 (1991). In order to dismiss a complaint under Civ.R. 12(B)(6), "it must appear 'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle [the plaintiff] to relief.'" *Id.*; *Rich v. Erie County Dep't of Human Resources*, 106 Ohio App.3d 88, 91, 665 N.E.2d 278 (6th Dist. 1995); *O'Brien v. Univ. Community Tenants Union*, 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975). When ruling on a motion to dismiss pursuant to Civ.R. 12(B)(6), a court "must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party." *York*, 60 Ohio St.3d at 144, citing Mitchell, 40 Ohio St.3d at 193.

In considering a Motion to Dismiss under Civ. R. 12(B)(6), the Court may consider the pleadings and copies of written instruments upon which a claim is predicated without converting the motion to one for Summary Judgment. *Springfield Fireworks, Inc. v. Ohio DOC*, 10th Dist. No. 03AP-330, 2003-Ohio-6940, ¶12. Here, Plaintiff can prove no set of facts upon which relief can be granted; therefore, Defendants are entitled to a dismissal under Civ.R. 12(B)(6) as Plaintiff cannot state a plausible claim for relief under the theory of hostile work environment sexual harassment or premises liability in this case.

**III.    CONCLUSION**

WHEREFORE, Defendant, Cedar Fair respectfully request that Plaintiff's claims be dismissed with prejudice pursuant to Civ. Rule 12(b)(6).

15

Respectfully submitted,

/s/Justin D. Harris
JUSTIN D. HARRIS (0078252)
REMINGER CO., L.P.A.
237 W. Washington Row, 2nd Floor
Sandusky, Ohio 44870
Phone: (419) 609-1311
Fax:    (419) 626-4805
E-Mails: jharris@reminger.com

Counsel for Defendants

## CERTIFICATE OF SERVICE

A copy of the foregoing Defendants' Motion to Dismiss was sent this 11th day of October 2021, by regular U.S. mail and/or via e-mail to the following:

| | |
|---|---|
| Owen B. Dunn, Jr. (OH00074743)<br>The Law Offices of Owen Dunn, Jr.<br>The Ottawa Hills Shopping Center<br>4334 W. Central Avenue, Suite 222<br>Toledo, Ohio 43615<br>dunnlawoffice@sbcgolbal.net | Lead Counsel for Plaintiff |
| Bertrand R. Puligandla (OH611400)<br>Vijay K. Puligandla (OH0041011)<br>The Puligandla Law Firmm, LLC<br>1700 Canton, Suite 1-A<br>Toledo, Ohio 43604<br>vpuligandla@yahoo.com | Co-Counsel for Plaintiff |

/s/Justin D. Harris
JUSTIN D. HARRIS (0078252)