UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Leeann Harwick,                                          Case No. 3:21-cv-1574

          Plaintiff,

    v.                                                  MEMORANDUM OPINION
                                                          AND ORDER

Cedar Fair, L.P., *et al.*,

          Defendants.

## I. INTRODUCTION

Defendants Cedar Fair, L.P., and Cedar Point Park LLC move to dismiss Plaintiff Leeann Harwick's complaint for failure to statute a claim upon which relief may be granted. (Doc. No. 7). Harwick filed a brief in opposition, (Doc. No. 10), and Defendants filed a brief in reply. (Doc. No. 12). For the reasons stated below, I grant Defendants' motion.

## II. BACKGROUND

Harwick previously was an employee at Cedar Point, in Sandusky, Ohio. She, along with many of her co-workers, lived in employee dormitories owned and operated by Defendants. (Doc. No. 3 at 3). During the evening hours of August 12, 2020, and the early morning hours of August 13, 2020, Harwick attended social gatherings with several coworkers, including a man named Can Oncul, who was from the Republic of Türkiye. (*Id*.). Afterwards, Harwick, Oncul, and several other coworkers returned to a housing community where they each lived known as the Commons, which is made up of several different dormitories. (*Id.*) Harwick went to her room alone but, a short

while later, Oncul showed up, unannounced and uninvited. (*Id.* at 4). Harwick alleges Oncul entered her room, locked the door behind him, and then raped her. (*Id.* at 4-5).

Harwick attempted to escape by telling Oncul she needed to use the bathroom, but Oncul insisted he would go with her and held onto her arm in the hallway. (*Id.* at 5). Harwick was able to get away from Oncul when he entered the bathroom first to check if it was empty. (*Id.*). Harwick first looked for a security officer at the front entrance to her dormitory. (*Id.*). She alleges security officers had been posted at the entrance in prior years but there was no one there on August 13. (*Id.*).

Harwick returned inside and hid in a stall in a bathroom on a different floor. (*Id.*). From there, she texted her stepfather, who contacted the Sandusky Police Department. (*Id.*). Two female Cedar Point security officers came to the bathroom where Harwick was hiding and escorted her to a Sandusky Police vehicle outside. (*Id.*). The officers reentered the dormitory and located Oncul in Harwick's room. (*Id.*). Oncul was taken to the Sandusky Police station for questioning, while the Cedar Point officers accompanied Harwick to a local hospital where she was later evaluated by a sexual assault nurse examiner. (*Id.* at 5-6). Harwick alleges Oncul "briefly continued his employment at Cedar Point" before fleeing the country and returning to Türkiye.[1] (*Id.* at 6).

Harwick submitted a charge to the United States Equal Employment Opportunity Commission. She received a right to sue letter on July 14, 2021, and filed suit within 90 days of receiving that letter. (Doc. Nos. 1 and 1-1). She asserts hostile work environment claims under Title VII, 42 U.S.C. § 2000e, and Ohio Revised Code § 4112, as well as a premises liability claim under Ohio common law. (Doc. No. 3).

---

[1] Defendants repeatedly point out that Oncul was not named as a defendant in this litigation. (*See, e.g.,* Doc. No. 7 at 2). Given the parties' agreement that Oncul evaded potential criminal prosecution by fleeing the country, it is difficult to see why Plaintiff's counsel would take on the added expense and effort of attempting to perfect international service of the pleadings on a party who almost certainly would undertake further efforts to evade being held to account for his actions.

### III. STANDARD

A defendant may seek to dismiss a plaintiff's complaint on the ground the complaint fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff and accepts as true well-pleaded factual allegations. *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 896 (6th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Factual allegations must be sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Legal conclusions and unwarranted factual inferences are not entitled to a presumption of truth. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### IV. ANALYSIS

#### A. HOSTILE WORK ENVIRONMENT

Defendants move to dismiss Harwick's hostile work environment claims, arguing it is not liable because Defendants could not have foreseen Oncul's actions and responded promptly to the assault after learning of it.

A plaintiff who asserts a Title VII claim of hostile work environment based on sex must show:

> (1) she belonged to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on [sex], (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act.

*Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813-14 (6th Cir. 2013) (quoting *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011)) (alteration in *Waldo*).[2]

---

[2] Ohio courts apply federal case law interpreting Title VII to sexual harassment claims brought pursuant to Ohio Revised Code § 4112 and, therefore, I rely on federal case law in considering Harwick's federal and state law claims. *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008) (citing *Hampel v. Food Ingredients Specialties, Inc.*, 729 N.E.2d 726, 731 (Ohio 2000)).

3

I conclude Harwick fails to state a claim for hostile work environment because, even if I assume she has alleged facts sufficient to satisfy the first four elements, she has not plausibly alleged Defendants knew or should have known about the harassment and failed to act.

"For a plaintiff to hold an employer liable for the harassing conduct of an employee's co-workers, the plaintiff must show that the employer's response to the plaintiff's complaints manifested indifference or unreasonableness in light of the facts the employer knew or should have known." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 417 (6th Cir. 2021) (quoting *Waldo*, 726 F.3d at 814) (further citation, internal quotation marks, and brackets omitted). An employer's response generally "'is adequate if it is reasonably calculated to end the harassment.'" *Waldo*, 726 F.3d at 814 (quoting *Jackson v. Quanex Corp.*, 191 F.3d 647, 663 (6th Cir. 1999)).

Harwick alleges that, once her stepfather called the Sandusky Police Department, "two female Cedar Fair security persons came to the restroom, escorted . . . [her] outside, and put her in a Sandusky Police car." (Doc. No. 3 at 5). They then returned to the building, located Oncul in Harwick's room, and turned him over to the Sandusky Police. (*Id.*) The Cedar Fair officers then accompanied Harwick to a local hospital. (*Id.*). Harwick does not allege she had any further interactions with Oncul before he allegedly fled the country. (*Id.*).

Thus, the facts alleged in the Amended Complaint show Defendants took "prompt remedial action," *Jackson*, 191 F.3d at 659, upon learning of Oncul's conduct by moving Harwick to a safe location before locating Oncul and turning him over to the Sandusky Police Department. I conclude Defendants' response to Harwick's allegations against Oncul did not "'manifest[] indifference or unreasonableness in light of the facts'" Defendants knew or should have known. *Hawkins*, 517 F.3d at 338 (quoting *Collette v. Stein-Mart, Inc.*, 126 F. App'x 678, 684, n.3 (6th Cir. 2005) and *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 829 (6th Cir. 1999)).

Harwick argues Defendants had a duty to take preventative measures to protect her from Oncul's assault. In support of this argument, she relies primarily on *Hush v. Cedar Fair, L.P.*, 233 F. Supp. 3d 598 (N.D. Ohio 2017). (Doc. No. 10 at 5-6). But, with all due respect to my colleague, *Hush* does not employ the correct standard.

In *Hush*, a Cedar Point employee allegedly sexually assaulted a minor female in the employee's room in an employee dormitory. *Hush*, 233 F. Supp. 3d at 601-02. The plaintiff asserted sexual harassment claims under federal and Ohio law. In evaluating these claims, the *Hush* court stated the plaintiff, in part, had to prove "the employer failed to take reasonable care to prevent and correct any sexually harassing behavior." *Id.* at 603 (citing *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462-63 (6th Cir. 2000) and *Williams v. General Motors Corp.*, 187 F.3d 553, 560–61 (6th Cir.1999)). But *Bowman* and *Williams* involved allegations of sexual harassment by supervisors rather than coworkers. *See Bowman*, 220 F.3d at 461; *Williams*, 187 F.3d at 560-61. And the Supreme Court has held "different rules apply where the harassing employee is the plaintiff's 'supervisor,'" rather than the plaintiff's coworker. *Vance v. Ball State Univ.*, 570 U.S. 421, 428 (2013).

Employers "have an *affirmative duty* to prevent sexual harassment by supervisors." *Williams*, 187 F.3d at 561 (emphasis in original). This elevated standard does not apply in cases involving coworker harassment, in which the employer may be held liable only if it "failed to take prompt *remedial* action." *Jackson*, 191 F.3d at 659 (emphasis added). The facts alleged do not plausibly show Defendants failed to do so. Therefore, I grant their motion to dismiss Harwick's hostile work environment claims.

B.     PREMISES LIABILITY

Under Ohio law, an owner or occupier of a premises owes an invitee "a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger." *Paschal v. Rite Aid Pharmacy, Inc.*, 480 N.E.2d

5

474, 475 (Ohio 1985). "A premises owner must warn its invitees of latent or concealed dangers if the owner knows or has reason to know of the hidden dangers." *Aycock v. Sandy Valley Church of God*, 2008-Ohio-105, 2008 WL 115829, at *4 (Ohio Ct. App. Jan. 8, 2008) (citing *Jackson v. Kings Island*, 390 N.E.2d 810, 813 (Ohio 1979)).

The general rule in a premises liability case is that 'there is no . . . duty to anticipate or foresee criminal activity.'" *Est. of Ciotto v. Hinkle*, 145 N.E.3d 1013, 1021 (Ohio Ct. App. 2019) (quoting *Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.*, 543 N.E.2d 769, 773 (Ohio 1989)) (further citation omitted). There are a few limited exceptions to this general rule, including that, in certain circumstances, a "special relationship may arise based on the foreseeability of the harm . . . to impose a duty where a third party uses the property to inflict harm 'similar in nature to that already experienced or initiated' from the premises." *Ciotto*, 145 N.E.3d at 1021 (quoting *Fed. Steel*, 543 N.E.2d at 776). Foreseeability, in turn, is defined in the context of the "totality of the circumstances," such as "the location and character of the business and past crimes of a similar nature." *Krause v. Spartan Stores, Inc.*, 815 N.E.2d 696, 699 (Ohio Ct. App. 2004) (citing *Reitz v. May Co. Dep't Stores*, 583 N.E.2d 1071, 1074-75 (Ohio Ct. App. 1990)) (further citation omitted).

Ohio courts have refined this point even further: "the totality of the circumstances [must] be 'somewhat overwhelming' before a business owner or operator will be held to be on notice of and under a duty to protect against the criminal acts of third parties." *Mack v. Ravenna Men's Civic Club*, 2007-Ohio-2431, 2007 WL 1461791, at *4 (Ohio Ct. App. May 18, 2007) (citing cases). This "standard" requires that the facts underlying the plaintiff's claim involve "circumstances in which 'a reasonably prudent person would have anticipated that an injury was *likely* to result from the performance or nonperformance of an act.'" *Ciotto*, 145 N.E.3d at 1022 (quoting *Fed Steel*, 543 N.E.2d at 773) (emphasis added by *Ciotto*).

6

Harwick has not plausibly alleged a reasonably prudent person would anticipate a criminal act was likely to result from Defendants' allegedly reduced security measures. (*See* Doc. No. 3 at 12-14). She alleges only that Defendants knew of "previous incidents of rape and/or sexual assault" in employee dormitories. (*Id.* at 13). The Amended Complaint contains no indication as to the recency of these incidents or that these crimes took place with such frequency to create the "somewhat overwhelming" circumstances Ohio law requires before a landlord may be held to have an affirmative duty to prevent criminal actions against its tenants. *See Ciotto*, 145 N.E.3d at 1022 (holding the landlord does not have a duty to prevent the criminal actions of a third party unless the landlord has "knowledge that an injury is likely"). Therefore, I conclude Harwick has not stated a plausible premises-liability claim.

One final matter. Defendants repeatedly suggest they should not be held liable for failing to prevent the rape because Harwick socialized with Oncul and does not allege she observed anything untoward. (*See, e.g.,* Doc. No. 7 at 7, 12, and 14; Doc. No. 12 at 5-6). For instance, Defendants argue:

> Clearly, Plaintiff, herself, would be in a better position than the Defendants to determine if it were foreseeable that Mr. Oncul would sexually assault her when she shared her private room number with him after spending the evening drinking and socializing with him. Stated differently, how could the Defendants be in a better position to know it was foreseeable that Can Oncul would sexual[ly] assault the Plaintiff, when the Plaintiff, after spending most of the evening with Can Oncul, did not know she would be sexually assaulted?

(Doc. No. 7 at 7-8) (alteration added).

Beyond the fact that Harwick's subjective knowledge, observations, and opinions are not relevant to the objective questions of whether Defendants undertook a prompt remedial response or whether a reasonably prudent person would anticipate an injury was likely to occur, Defendants' argument also raises the specter of victim-blaming. These types of arguments are plainly improper, and I strongly caution counsel for Defendants not to make the same choice in future cases.

7

## V. CONCLUSION

For the reasons stated above, I grant Defendants' motion to dismiss Harwick's claims for failure to state a claim upon which relief may be granted. (Doc. No. 7).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge
